UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASE BOURQUE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA DEPARTMENT OF STATE, et al.,<br><br>Defendants. | Case No. 24-cv-06994-EMC (LJC)<br><br>**ORDER RESOLVING JOINT LETTER REGARDING QUERIES 8 AND 9**<br><br>Re: Dkt. No. 91 |

This case essentially challenges Defendants' increase of an expedited passport application processing fee from $35 to $60 in 2002 and continued assessment of that fee through the present day. See Am. Compl. (ECF No. 46) ¶ 23. Plaintiffs contend that the fee is arbitrary and improperly exceeds Defendants' costs. *Id.* ¶¶ 86–88, 97. The parties previously submitted a joint letter raising disputes regarding certain search queries that Plaintiffs asked Defendants to run in response to Plaintiffs' first set of requests for production, which "sought documents explaining the basis of the $60" fee that Defendants charge for expedited passport processing. ECF No. 67 at 1. On September 25, 2025, the Court resolved some of their disputes but directed them to submit another joint letter regarding Query Nos. 8 and 9, which sought documents related to a 2017 Office of Inspector General (OIG) audit and a 2022 Government Accountability Office (GAO) report.[1] ECF No. 75 at 2. The Court noted that those reports did not appear to consider specifically the expedited processing fee at issue in this case, and thus directed the parties to address the relevance to this case of Defendants' general fee-setting methodology. *Id.* The

---

[1] The record does not include Plaintiffs' actual requests for production, and both parties' address the disputed search queries on the merits of whether they are sufficiently relevant and proportional to the needs of the case. The Court presumes that the queries fall within the scope of requests for production that Plaintiffs served under Rule 34 of the Federal Rules of Civil Procedure.

parties' second joint letter, which was delayed by a lapse in Congressional appropriations, is now before the Court. Dkt. No. 91.[2]

This Order presumes the parties' familiarity with the case, the record, and general principles of civil discovery in federal court. *See, e.g.*, Fed. R. Civ. P. 26(b)(1).

### A.     Query No. 8

Query No. 8 seeks documents related to the Department of State Office of Inspector General's September 2017 report titled "Audit of the Bureau of Consular Affairs Fee-Setting Methodology for Selected Consular Services" (the OIG Report).[3] The contracted auditor, "Kearney & Company, P.C. (Kearney), limited its audit scope to the three highest-earning Department-retained fees during FYs 2014 and 2015: Western Hemisphere Travel Initiative (WHTI) fee, Passport Security Surcharge (PSS), and [Machine Readable Visa] MRV fees." OIG Report at 1. Together, those three categories of fees made up around 73% of consular fees collected in those years. *See id.* The report noted "fees charged to American citizens for expedited processing of passports" as among the "many different fees" that the State Department collected, but did not include those in the scope of its audit. *Id.*

The report determined that the State Department "recovered more than the full cost of providing consular services" in each of the years it studied. *Id.* at 5. Some of that excess "may have been allowable," but some was not. *Id.* A portion of the unallowable excess recovery was specific to the State Department's treatment of MRV fees, which are not at issue in this case. *Id.* at 6, 8–13. But even "[a]side from failing to adjust non-petition-based MRV fees to reflect costs, CA [i.e., the Bureau of Consular Affairs] also generally collected revenues in excess of costs because of several flaws in its fee-setting methodology." *Id.* at 6. The report explained that the Bureau of Consular Affairs "developed a Cost of Service Model (COSM) using commercial, off-the-shelf software" in order to "determine the amount to charge for each type of consular service."

---

[2] The Court also more recently resolved a dispute regarding production schedules, ordering Defendants to produce documents in response to other queries by December 30, 2025. *See* ECF No. 92.
[3] *Available at* https://www.stateoig.gov/uploads/report/report_pdf_file/aud-fm-17-53_1.pdf [https://perma.cc/WZ55-3R4X].

*Id.* at 4. According to the report, the implementation of that model was flawed:

> Although CA considered relevant factors during the fee-setting process, such as costs, levels of effort, and workload volumes, CA's process did not sufficiently consider carry forward balances during the fee-setting process. In addition, CA's process did not sufficiently analyze the long-term net financial results of its operations to determine whether adjustments to the fee-setting methodology were needed. Kearney also identified issues concerning whether the data used were sufficient to set the fees, which would affect the accuracy of the calculated fee amounts. For example, CA did not have policies or procedures that required the staff to maintain historical data or to document methodologies used to calculate the fee. Moreover, CA did not have a sufficient process in place to perform quality control activities related to the data. Although Kearney is unable to assign a specific portion of the CBSP revenue collected in excess of costs in FYs 2014 and 2015 to the flaws in CA's methodology, at the beginning of FY 2017, the total CBSP unobligated balance was almost $1.4 billion. Annually, CA intends to carry 25 percent of its anticipated expenses in unobligated balances forward; however, the FY 2017 balance is 31.4 percent of expenses, or $284 million more than CA anticipated needing. CA should address the flaws in its methodology, determine whether 25 percent is an adequately precise and adequately explained estimate of costs, and remit the $284 million and any other amounts determined to be excessive to Treasury to be put to better use across the Federal Government to the benefit of the taxpayers.

*Id.* at 6–7 (footnote omitted); *see also id.* at 13–19.

Those generalized concerns appear to implicate considerations that may have been relevant to the expedited processing fee at issue in this case.

As Defendants note, *id.* at 5, the Bureau of Consular Affairs committed in 2017 to adopting "a majority of the OIG's recommendations in the 2016 Cost of Service Model (COSM) and fee setting recommendation process." OIG Report at 32. Defendants also assert, and Plaintiffs do not dispute, that a new model was used for Fiscal Year 2018. ECF No. 91 at 5. Defendants therefore contend that this report is not relevant to this case, *see id.*, where Plaintiffs acknowledge, that the class period in this case "runs from October 4, 2018 to the present," *id.* at 2, thus beginning in Fiscal Year 2019.

Though Plaintiffs do not meaningfully address that argument regarding the relevant time period, the Court is not satisfied that it warrants limiting discovery. The expedited processing fee at issue was increased to its current value of $60 in 2002. The extent to which Defendants became aware of potential defects in their general cost-setting methodology in the years since then, and

3

made changes to that methodology as a result, may bear on the reasonableness of Defendants' decision to leave the expedited processing fee unchanged since 2002. Even accepting Defendants' legal contention that "a fee need only bear a reasonable relationship to the cost of the services rendered by the agency," purported methodological defects identified and potentially corrected while the disputed fee was in place could be relevant to that inquiry. *See* ECF No. 91 at 4 (quoting *Nat'l Cable Television Ass'n, Inc. v. FCC*, 554 F.2d 1094, 1108 (D.C. Cir. 1976)). On the other side of the scale, Defendants have not shown any specific undue burden or prejudice in running this query and producing the resulting documents to the extent they are discoverable.

Defendants are therefore ORDERED to search for documents using Query No. 8 and produce the resulting discoverable documents in response to Plaintiffs' requests for production no later than January 9, 2026.

## B.     Query No. 9

Query No. 9 seeks documents related to an April 2022 Government Accountability Office (GAO) report titled "CONSULAR AFFAIRS State May Be Unable to Cover Projected Costs if Revenues Do Not Quickly Rebound to Pre-Pandemic Levels" (the GAO Report).[4] That report was primarily concerned with the State Department's potential inability to cover its costs due to a decline in revenue related to the COVID-19 pandemic. The GAO conducted its own analysis of likely future costs and revenue, including specifically revenue from the expedited passport fee. GAO Report at 92–93. It also noted that "State has historically made no obligations against expedited passport fee revenue for consular services," *id.* at 92, and that in 2020 the State Department began shifting its allocation of such revenue "from supporting the Information Technology Central Fund to supporting the Consular and Border Security Programs (CBSP) account," *id.* at 10 n.c; *see also, e.g., id.* at 12 nn.27–28; *id.* at 17–18; *id.* at 23 n.a; *id.* at 35.

The GAO therefore appears to have investigated at least to some degree how the State Department actually used its expedited passport fees and how that affected its modeling of costs and revenue. The GAO also raised similar concerns to the 2017 OIG report, noting a lack of

---

[4] *Available at* https://www.gao.gov/assets/gao-22-104424.pdf [https://perma.cc/WSZ4-M9NJ].

4

1 documentation for certain aspects of the State Department's economic analysis with respect to its
2 general Cost of Service Model. *Id.* at 48–54.  Both of those topics have sufficient potential
3 relevance to warrant discovery in the absence of a specific showing of undue burden or prejudice.
4 Defendants are therefore ORDERED to search for documents using Query No. 9 and produce the
5 resulting discoverable documents in response to Plaintiffs' requests for production no later than
6 January 9, 2026.

**IT IS SO ORDERED.**

Dated: December 12, 2025

LISA J. CISNEROS
United States Magistrate Judge