UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASE BOURQUE, et al., | Case No. 24-cv-06994-EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO CERTIFY CLASS** |
| UNITED STATES OF AMERICA DEPARTMENT OF STATE, et al., | |
| Defendants. | Docket No. 107, 121 |

Plaintiffs allege that the U.S. Department of State ("the Department") has overcharged 37 million Americans for expedited passport fees in violation of the Little Tucker Act, 28 U.S.C. § 1346(a) and the Administrative Procedures Act, 5 U.S.C. § 702.  Plaintiffs move to certify a class under Rule 23(b)(3) and (b)(2) of "All persons who paid the expedited passport processing fee from October 4, 2018 through the date of final judgment in this matter."  The Department opposes. The Department also moves to exclude a declaration from Plaintiffs' damages expert.

For the reasons stated below, Plaintiffs' motion to certify is **GRANTED** in part and **DENIED** in part.  The Department's motion to exclude is **DENIED**.

## I.    BACKGROUND

The facts presented on class certification are not complicated.  For a fee, the United States Department of State offers expedited passport processing—issuing or renewing a passport faster than through routine processing.  Dkt. No. 46 ¶ 1 (FAC).  Since at least 2018, the State Department has charged $60 for this service.  *Id.*  Plaintiffs are California residents who paid the State Department's expedited passport fees between 2019 and 2025.  *Id.* ¶¶ 3-7.  They bring this putative class action, alleging that the Department has overcharged them, on behalf of "All

persons who paid the expedited passport processing fee from October 4, 2018 to the present." *Id* ¶ 75.

The State Department has authority to charge fees under 1 U.S.C. § 9701, Title V of the Independent Offices Appropriations Act of 1952, or the "IOAA." The statute states that "Each charge shall be— (1) fair; and (2) based on— (A) the costs to the Government; (B) the value of the service or thing to the recipient; (C) public policy or interest served; and (D) other relevant facts."

In 1994, the Department set a $30 fee for expedited processing. FAC ¶ 18. The fee was raised to $35 in 1997. *Id.* ¶ 20. In 2002, the fee was raised to $60 to pay for "additional costs" associated with expedited processing. *Id.* ¶ 23; Schedule of Fees for Consular Services, 67 Fed. Reg. at 14896. In 2004, an internal cost of service study reported a unit cost of $34.48 for expedited processing, but Consular Affairs recommended keeping the fee at $60. Dkt. No. 109-3 (citing Ex. 15). In 2017, internal data showed a cost of service for expedited processing at lower than $60, leading to an initial recommendation to adjust the fee to $15. *Id.*, Ex.16. However, in 2018, an Action Memo for the Department recommended that the Department maintain the fee at $60, which it did. *Id.*, Ex. 14. As memorialized in this Action Memo, the Deputy Undersecretary approved that recommendation in September 2018, maintaining the fee at $60. Dkt. No. 122 at 5 (citing Ex. C).

In 2019, an expert study ordered by the Department found that "the unit cost of expedited passports is significantly lower than the current fee." Dkt. No. 109-3 at Ex. 20. After receiving this report, Consular Affairs did not lower the fee to match the unit cost that the report found but instead adopted a new methodology to calculate the fee, the Time-Based Value Fee. This methodology assesses the fee based on the "value of the service to the applicant by calculating the amount of time saved (compared to standard processing) and the associated value to the applicant." *Id.*, Ex. 11. In June of 2021, the Deputy Assistant Secretary approved the recommendation to adopt this time-based value methodology and to maintain the fee at $60 dollars. Dkt. No. 122 (citing Jacob Decl at 26, Ex. F.)

Plaintiffs, on behalf of a putative class of 37 million Americans, allege that the Department

overcharged them for expedited passport fees because the fees charged exceeded the costs of providing the service. Plaintiffs move now for class certification.

## II.    LEGAL STANDARD

As the parties seeking class certification, Plaintiffs must demonstrate that their proposed class satisfies each requirement of Rule 23 by a preponderance of the evidence. *Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022)). Before the Court may certify a class, it must be "'satisfied, after a rigorous analysis,'" that Plaintiffs have established the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. *Id.* at 664. In determining whether class certification is appropriate, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–178 (1974).

## III.    DISCUSSION

### A. Standing

"[S]tanding at the time of class certification must be established by a preponderance of the evidence." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "[T]he fact that the named Plaintiffs have standing to seek damages does not mean that they automatically have standing to seek injunctive relief." *DZ Rsrv.*, 96 F.4th at 1240.

#### 1.    Standing for 23(b)(3) Class

To establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *Lujan v. Defenders*

United States District Court
Northern District of California

United States District Court
Northern District of California

*of Wildlife*, 504 U. S. 555, 560-561 (1992). The Department does not dispute that Plaintiffs satisfy the concrete injury prong of the standing test through payment of the $60 fee but argues that Plaintiffs fail to establish causation and redressability because "by the time they paid it, the fee decisions challenged in their Amended Complaint had been superseded by later ones." Dkt. No. 122 at 11. This standing challenge is rooted in the Department's theory that by naming the 2002 Department rule setting a $60 fee in Plaintiffs' complaint, not the more recent 2018 and 2021 decisions maintaining that $60 fee, Plaintiffs have failed to challenge the "operative" Department policy and can receive no relief. The Department does not explain how this distinction is material for standing purposes. Plaintiffs allege that they were injured by the $60 expedited passport processing fee. This injury was caused by the Department's exaction of the passport fee, whether characterized as being set in 2002, 2018, or 2020, and can be redressed through a refund to Plaintiffs. Causation and redressability are satisfied.

### 2. Standing for 23(b)(2) Class

In order to establish standing for injunctive relief, "a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "The plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. UPS,* 511 F.3d 974, 985 (9th Cir. 2007) (citations and quotation marks omitted). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010); *see Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (no injunctive standing where it is "speculative" that Plaintiff would "again experience injury" from even a continuing practice).

Here, each named plaintiff previously paid the Department's expedited passport processing fee and received a passport that is valid for ten years. Plaintiffs conceded at oral argument that the

4

earliest any of them would need to renew their passports is 2029.  Many will not face the issue until years after that.  Plaintiffs thus have no immediate need for a new or renewed passport.  Even accepting that plaintiffs will eventually need to renew their passports, expedited processing is a voluntary option that a passport applicant may select when their personal circumstances require immediacy, not the default.  Plaintiffs may avoid paying the expedited passport fee in the future simply by submitting their renewal in advance of the expiration date.  Plaintiffs thus cannot show, beyond speculation, that they will need expedited passport processing in the future.  Without this showing, they do not satisfy injunctive standing.

Because Plaintiffs lack injunctive standing, their motion to certify a class under 23(b)(2) is **DENIED**.[1]

### 3. Exhaustion of Administrative Remedies

The Department also contends that there is no standing because Plaintiffs failed to exhaust their administrative remedies.  However, "administrative exhaustion is required as a prerequisite to judicial review only 'when expressly required by statute or ... agency rule[.]'" *Gonzales v. Dept. of Homeland Sec.* 508 F.3d 1227, 1233 n. 4 (9th Cir. 2007) (quoting *Darby v. Cisneros*, 509 U.S. 137, 154 (1993)).  Here, the Department argues only that Plaintiffs "could have filed a petition for rulemaking with the Department before bringing suit."  Dkt. No. 122 at 13 (citing 5 U.S.C. § 533(e)).  But "could have" is not the same as "required to."  5 U.S.C. § 533(e) merely provides that an agency "shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule."  The Department points to no express requirement that Plaintiffs were required to exhaust before bringing suit.  Rather, the Department contends that a petition for rulemaking would have "greatly facilitated" judicial review.  Dkt. No. 122 at 14.  That is not the standard; the fact that Plaintiffs could have taken a different litigation route is not a basis to deny them judicial review where there is no statutory exhaustion requirement.

United States District Court
Northern District of California

---

[1] While Plaintiffs referenced during oral argument that their Complaint seeks declaratory, as well as injunctive relief, their Motion to Certify does not explicitly seek such declaratory relief. *See* Dkt. No. 107 at 11 (describing Plaintiffs' proposed injunctive relief only).

**B. Class Certification**

Federal Rule of Civil Procedure 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The purpose of the Rule 23 requirements is to determine whether a class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Although the Rule 23 analysis is "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," merits questions enter the analysis "only to the extent[] that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

A Rule 23 analysis has two subparts. The first is Rule 23(a), which contains four elements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Second, Plaintiffs must also satisfy the requirements of at least one part of Rule 23(b). A (b)(3) class may be certified when plaintiffs show that questions common to the class "predominate" over questions specific to individual class members, and that a class action is the "superior" method for adjudicating the claims. Fed. R. Civ. P. 23(b)(3).

### 1. Rule 23(a) Requirements

#### a. Numerosity

The proposed class consists of over 37 million Americans. Graber Decl. at 22. The Department does not dispute that the proposed class is sufficiently numerous.

#### b. Commonality

The Rule 23(a)(2) commonality requirement considers whether a class action will "generate common answers apt to drive the resolution of the litigation." *Torres v. Mercer Canyons Inc.*, 835 F. 3d 1125, 1133 (9th Cir. 2016) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). "To satisfy Rule 23(a)(2) commonality, '[e]ven a single [common] question will do.'" *Id.*

Plaintiffs submit that they raise multiple common questions, including:

United States District Court
Northern District of California

- Does the EPF exceed the cost to the Government of providing expedited processing?
- Did the State Department exceed its authority when it set and maintained the expedited passport processing fee at an amount exceeding this cost?
- Did the Government provide adequate notice under the APA regarding the EPF?
- Is the Government's so-called "Time-Based Value" methodology unlawful under the IOAA?

The Department contends that none of these questions suffice because they "rely on misinterpretations of the applicable law, raise issues outside the scope of their Amended Complaint, and ignore that even under their theory, answers will depend on the specific Department fee-setting decision in effect when any putative class member paid the EPF." Dkt. No. 122 at 16. But these are all merits complaints. *See Amgen*, 568 U.S. at 466 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). Even if the answers to all of Plaintiffs' proposed questions are resoundingly in the Department's favor on the law and facts, that does not make the questions themselves any less common. Plaintiffs' claims will stand – or fall – on a class wide basis. Which party is likely to prevail on a particular issue is one thing;  whether that issue can be resolved in one stroke applicable to the entire class is another.

The Department attempts to argue that the class questions are not "common" because the Department has issued multiple fee-setting decisions "periodically," making the reasonableness of each decision a separate question. Dkt. No. 122 at 17-18. But "[t]he existence of shared legal issues with divergent factual predicates is sufficient" for certification. *Gonzalez v. U.S. ICE*, 975 F.3d 788, 807 (9th Cir. 2020). Even if the factfinder must evaluate multiple Department decisions, the underlying legal issue of whether the $60 fee was excessive remains a common inquiry. Even if the Court accepts that the separate Department decisions in 2018 and 2021 require separate treatment, this would suggest the creation of two subclasses, in which questions would remain common. It does not defeat commonality, or certification. Under Rule 23(c)(5), subclasses are treated as classes for purposes of applying the requisites of Rule 23 (a) and (b). As to each of the 2018 and 2021 agency decisions, there common questions.

7

*c.   Typicality*

Typicality requires that the class representatives' claims "are reasonably coextensive with those of absent class members." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotations omitted).

Here, the class representatives are typical because they each sought expedited passport processing and paid the $60 expedited processing fee. Although the Department argues that each fee-setting decision is a separate course of conduct that must be evaluated separately, the Department does not show that any class representative's claim is atypical of the wider class who paid in the same timeframe. Plaintiffs have class representatives who paid the fee while both policies the Department contends are material – the 2018 and 2021 policies – were in effect. There is no typicality problem.

*d.   Adequacy*

Representative parties satisfy the adequacy requirement of Rule 23(a)(4) when the named plaintiffs and counsel (1) have no conflicts with the proposed class and (2) will "prosecute the action vigorously." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); Fed. R. Civ. P. 23(a)(4) (requiring class representatives to "fairly and adequately protect the interests of the class").

Plaintiffs here are adequate. They paid the same fee as the rest of the class and have no conflicts of interest. Their incentives for pursuing the case are aligned with those of the class. And the litigation to date, which has included adjudicating a motion to dismiss and multiple discovery disputes, supports that Plaintiffs have prosecuted the action vigorously and will continue to do so.

The Department contends that Plaintiffs are not adequate (1) because they have not produced fee retainer agreements between themselves and counsel in discovery; (2) because Plaintiff's counsel does not have experience with class actions against federal agencies; and (3) because Plaintiffs' counsel "did not follow standard procedure for their APA claim."

8

Dkt. No. 122 at 19-20.  None of these are valid adequacy arguments.  The fact that the Department does not like Plaintiffs' litigation tactics does not show that Plaintiffs' counsel is inadequate. Plaintiffs have, as the Department concedes, "extensive experience in bringing class actions," and the Department does not explain why this extensive experience is insufficient to litigate against a federal agency, as opposed to a corporation.  Dkt. No. 122 at 19.  Finally, on reply, the class representatives confirmed in sworn interrogatories that they do not have incentive agreements with counsel and have not been promised compensation for participating in the litigation.  Dkt. No. 135 at 5; *see also Flodin v. Cent. Garden & Pet Co.*, 2024 WL 3859803 at *1 (N.D. Cal. Aug 16, 2024)( "[C]lass representative engagement letters are not relevant unless the defendants can substantiate the existence of a conflict, beyond mere speculation.").  The Department's adequacy arguments are meritless.

### 2.  Rule 23(b)(3) Class

Plaintiffs seek to certify their illegal exaction claim under Rule 23(b)(3).  Certification under this rule is appropriate when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

#### a.  *Predominance*

The elements of an illegal exaction claim are "1) that money was taken by the Government; and 2) that the exaction violated a provision of the Constitution, a statute, or a regulation."  *Bassen v. United States*, 171 Fed. Cl. 273, 287 (2024).  Courts routinely find that in such claims, common questions predominate.  *See e.g.*, *Silver Buckle Mines, Inc. v. United States*, 132 Fed. Cl. 77, 99 (2017) (whether the government was required to refund a paid fee "easily satisfied" certification as an "identical legal question" was presented for each class member and the answer was outcome-determinative for the class as a whole); *Briggs v. United States*, 2009 WL 113387, at *10 (N.D. Cal. Jan. 16, 2009) (granting certification where "the primary issue posed by this litigation is the legality of the government's administrative offsets").

United States District Court
Northern District of California

Here, each member of the proposed class had the same $60 expedited processing fee exacted by the Department. Whether that fee violated the statute is a common question between the proposed class members that can be resolved "in one stroke." *Wal-Mart*, 564 U.S. at 350. The analysis on the merits involves questions common to all members of the class. The analysis will not vary from class member to class member (with the potential exception of varying arguments respecting the two agency actions in 2018 and 2021, as discussed above).

The Department makes two primary arguments that predominance is not satisfied. First, the Department argues that Plaintiffs fail to establish that the damages they seek can be calculated on a class-wide basis. Second, the Department argues that the "voluntary payment doctrine" bars recovery.

As to damages, the Department fails to demonstrate that damages are likely to vary among class members. If liability is established, all class members would be asking for the same dollar remedy: the difference between what they paid ($60) and what they should have paid. Even if the Department is correct that the periods following the 2018 and 2021 periods should be treated differently, this would at most require creating two subclasses, a permissible and feasible process under Rule 23(c)(5).

Moreover, to show predominance as to damages, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created legal liability." *James v. Uber Techs. Inc.*, 338 F.R.D. 123, 140 (N.D. Cal. 2021) (quoting *Vaquero v. Ashley Furniture Indus, Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016)). The Department does not dispute that the alleged damages stem from the Department's actions. Instead, its criticisms are of Plaintiffs' proposed damages calculation methodology and expert, whom it contends is not qualified to make such calculations because the Department is the only arbiter of what fee is appropriate. To the extent the Department's argument is that Plaintiffs cannot "translat[e] [their] legal theory of the harmful event into an analysis of the economic impact of that event," *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), because the "intricacies" of the Department's fee calculations and the factors it weighs are "within the Department's discretion," this amounts to a thinly-veiled merits argument.

Second, the Department raises the "voluntary payment" doctrine, which provides that

10

money "voluntarily paid to the government cannot be recovered." *Silver Buckle Mines, Inc. v. United States*, 132 Fed. Cl. 77, 85 (2017) (quoting *United States v. Edmonston*, 181 U.S. 500, 511 (1901)). The Department claims that the voluntary payment doctrine applies here because "payment of the EPF is quintessentially voluntary." Dkt. No. 122 at 23. Plaintiffs argue that the doctrine does not apply because the Department's alleged overcharging was deliberate. *See Starr Int'l Co. v. United States*, 121 Fed. Cl. 428, 471 (2015) (voluntariness of payment is a defense only in "narrow circumstances where there is a mutual mistake of law regarding the calculation"); *Gill v. Chipotle Mexican Grill, Inc.*, No. 8:24-cv-01672-FWS-JDE, 2025 U.S. Dist. LEXIS 235147, at *9 (C.D. Cal. Dec. 1, 2025) (voluntary payment doctrine did not apply where plaintiff's claim was "predicated on a lack of full disclosure by defendant").

Whether the voluntary payment doctrine applies and bars suit is, again, a merits issue. As Plaintiffs' argument hinges on whether Department's conduct in setting the fees was "deliberate," this question can be answered on a class wide basis. While the Department suggests that "to the extent any putative class member might seek to establish coercion to avoid the voluntary payment defense, the issue would have to be resolved on an individualized basis," it does not explain why this follows, especially when it contends in the same breath that the voluntary payment doctrine applies class wide. This argument supports, rather than defeats, predominance.

*b. Superiority*

Finally, class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods.,* 521 U.S. at 615; Rule 23(b)(3). The Department does not dispute that, if the other requirements are satisfied, class treatment would be superior. Dkt. No. 122 at 20-23 (challenging (b)(3) class based on predominance). Nor could it – mounting a full-scale lawsuit against the federal government over, at most, $60 dollars would be the action of "only a lunatic or fanatic." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (Posner, J.). It does not make sense to require massive numbers of small lawsuits for an issue that can be resolved with a single class action.

c. *Manageability*

The Department also does not dispute that the proposed class meets the manageability requirement.  The proposed class is manageable, since issues are common, government records make identification of the class members simple, the named plaintiffs do not present individualized issues, and there are no conflict of law disputes.

**C.  Expert Motion**

"[T]here is no requirement that the evidence relied upon by Plaintiffs to support class certification be presented in an admissible form at the class certification stage." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1024-25 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025). "[T]he relevant question on a motion to exclude expert testimony at class certification is whether the evidence will likely be able to generate common answers at trial." *Id.* at 1032.

Plaintiffs' damages expert Robert McDonald submits a declaration proposing a class wide method for calculating damages based on a cost accounting methodology, like the one the Department used before switching the value-add methodology.  The Department seeks to exclude Mr. McDonald's declaration under Rule 702 and *Daubert* from the Court's consideration for purposes of Plaintiffs' Motion to Certify a Class.  The Department argues that Mr. McDonald is not qualified to opine on internal government fee-setting, that he "disregards and contradicts what the Department already decided," and that his opinion encourages the Court to "substitute its judgment for the agency's regarding its choice of costing methodology — a technical matter over which agencies have significant discretion." Dkt. No. 121 at 1-2.

As previously discussed in the predominance section, these are not attacks on Plaintiffs' ability to calculate *class wide* damages or their experts' ability to do so if the Department loses on liability.  Plainly, damages may be calculated on a class wide basis by subtracting from the $60 fee that Plaintiffs paid whatever fee Plaintiffs contend they should have paid.  The Department objects to any calculation that differs from the Department's, but this objection has nothing to do with the class wide nature of damages – it could still be made even if Plaintiffs were not suing as a class. Plaintiffs have made an adequate showing that their damages are capable of calculation on a

class wide basis.  This is true with or without Mr. McDonald's declaration.

The Department's motion to exclude the declaration of Plaintiffs' damages expert for purposes of Plaintiffs' Motion to Certify a Class is **DENIED**.  Denial is without prejudice to a later *Daubert* motion as to Mr. McDonald.

### IV.    CONCLUSION

Plaintiff's motion to certify a class is **GRANTED** as to the proposed 23(b)(3) class but **DENIED** as to the proposed 23(b)(2) class.  The Department's motion to exclude Mr. McDonald's declaration is **DENIED**.

**IT IS SO ORDERED**.

Dated: 5/27/2026

_____

EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

13