United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHASE BOURQUE, et al.,

Plaintiffs,

v.

UNITED STATES OF AMERICA DEPARTMENT OF STATE, et al.,

Defendants.

Case No. 24-cv-06994-EMC (LJC)

**ORDER RESOLVING DISCOVERY LETTER BRIEFS REGARDING DELIBERATIVE PROCESS PRIVILEGE AND DOCUMENT PRODUCTION**

Re: Dkt. Nos. 110, 129

## I. INTRODUCTION

Plaintiffs in this class action challenge the $60 fee assessed by Defendant the Department of State (the Department) for expedited passport processing (referenced by the parties as the expedite passport fee, or EPF).[1] Applying for a new passport or renewal typically costs $130, plus a $35 facility acceptance fee for first-time passports.[2] By paying an additional $60, applicants can avoid waiting in as long a line for processing, and receive their passport around twenty-one days faster. Plaintiffs contend here that this expedited processing fee impermissibly exceeds the Department's costs to provide that service.

The parties raised a dispute regarding application of the deliberative process privilege. ECF No. 110. At this Court's direction, the parties selected a sample of documents for in camera review and submitted a further letter brief addressing those documents. ECF No. 129. As discussed below, Plaintiffs have shown sufficient cause to order production of approximately two hundred documents they prioritized for consideration, notwithstanding the deliberative process

[1] Some internal Department documents also refer to this fee as the passport expedite fee, or PEF.
[2] *See* U.S. Dep't of State, Passport Fees, https://travel.state.gov/en/passports/apply/help/fees.html (accessed September 16, 2026).

United States District Court
Northern District of California

privilege.

## II. BACKGROUND

As Judge Chen discussed in his order granting in part Plaintiffs' motion for class certification, the "Department has authority to charge fees under 1 U.S.C. § 9701," which provides "that 'Each charge shall be— (1) fair; and (2) based on— (A) the costs to the Government; (B) the value of the service or thing to the recipient; (C) public policy or interest served; and (D) other relevant facts.'" ECF No. 147 at 2. The expedited passport fee, first set at $30 in 1994, was raised to its current rate of $60 in 2002 "to pay for 'additional costs' associated with expedited processing." *Id.* It remained at that rate through multiple determinations that actual "unit costs" of expedited processing were meaningfully lower, and in 2021 the Department shifted to a "time-based value methodology" to justify the same $60 rate on a different basis: the value to the applicant rather than the cost to the Department. *See id.*

The parties now dispute whether the Department can rely on the deliberative process privilege to shield documents used in or reflecting its assessment of the expedited passport fee over roughly the last ten years. The Department submits a declaration by John Armstrong, Principal Assistant Secretary within the Department's Bureau of Consular Affairs (sometimes referenced as CA). ECF No. 110-1. Armstrong asserts that pre-decisional communications regarding the Department's cost-based fees, as well as communications regarding the unit costs used to set those fees, must be protected because their disclosure would subject the Department's decisions to second-guessing and thus chill the necessary internal free exchange of views and criticism. *See, e.g.*, *id.* ¶ 23.

Plaintiffs assert, and the Department does not dispute, that the Department invoked more than 6,000 assertions of privilege, primarily based on the deliberative process privilege, of which Plaintiffs have "prioritized roughly 200" for which to seek relief from the Court. ECF No. 110 at 1. The Court directed each side in this case to select seven documents for review in camera. ECF No. 115. The parties selected the following documents, for which this Order follows the parties'

United States District Court
Northern District of California

lead in referring to these documents based on the line numbers of a privilege log:[3]

- Line 10: a January 2018 spreadsheet summarizing fiscal year 2016 costs involved in expediting passport applications, as well as proposals by the Passport office for costs to be included in that accounting. According to the Department, this is a draft of a spreadsheet that, in its final form, has already been produced. *See* ECF No. 129 at 3 (citing ECF No. 110-1, ¶¶ 15, 18).
- Line 43: a September 2018 email thread among Department personnel[4] discussing costs for expedited passport applications submitted in person or by mail.
- Line 49: a sprawling January 2022 spreadsheet workbook documenting Office of Consular Services (OCS) services in fiscal years 2013 through 2020.
- Line 53: another wide-ranging spreadsheet workbook from February 2025 addressing fiscal year 2025 costs and fees, and which includes (among a great deal of other information) multiple calculations of the EPF using the new time-based value methodology. As with Line 10, the Department asserts that a final version of this spreadsheet was produced. ECF No. 129 at 3–4 (citing ECF No. 110-1, ¶¶ 15, 18).
- Line 65: a January 2020 email discussing the development of a presentation involving questions regarding the EPF.
- Line 68: a June 2019 email thread discussing documentation of the EPF and development of other possible methodologies for calculating it.
- Line 71: another June 2019 email thread in which a consultant shared a document regarding the EPF that had been mentioned in a meeting.
- Line 88: a February 2017 email thread discussing costs, pricing, and valuation of

[3] The following summary is based on the Court's in camera review of the documents themselves and on the privilege log filed as ECF No. 110-2

[4] Many of the emails submitted for review include contractors and consultants who were involved in the Department's calculations and deliberations. Plaintiffs have not suggested that the involvement of such personnel retained to assist in the Department's decision-making process vitiates the deliberative process privilege. For simplicity, this Order does not consistently distinguish between those individuals and personnel employed directly by the Department.

the EPF.

- Line 112: a June 2020 email thread discussing a draft document regarding potential changes to EPF methodology.
- Line 119: a May 2018 draft memorandum discussing, among other topics, potential effects of changes to the EPF and future changes to the methodology used to justify and calculate that fee. The Department has designated one paragraph of this document as also protected by attorney-client privilege.
- Line 145: a February 2018 email between certain Department personnel discussing a possible email to be sent to other Department personnel regarding potential EPF policy decisions.
- Line 148: a May 2021 email thread discussing resource requests for fiscal year 2023 and accounting for projections of EPF revenue.
- Line 266: an August 2014 redline draft of the Department's Cost of Service Model 2013 Annual Update and Report.
- Line 267: a December 2016 spreadsheet workbook addressing (among other information) certain fiscal year 2015 unit costs and potential fees.

## III. LEGAL STANDARD

"Federal common law recognizes the deliberative process privilege." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1120 (N.D. Cal. 2003). "To protect agencies from being forced to operate in a fishbowl, the deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (cleaned up). This privilege is intended to "blunt[] the chilling effect that accompanies the prospect of disclosure," thereby "encourag[ing] candor, which improves agency decisionmaking." *Id.*

> To properly assert this privilege, an agency must show that a document is both (1) "predecisional" or antecedent to the adoption of agency policy and (2) "deliberative," meaning it must actually be related to the process by which policies are formulated. A document is "predecisional" if it was prepared in order to assist an agency

> decisionmaker in arriving at his decision. A document is "deliberative" if disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.

*Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 783 (9th Cir. 2022); *see also Assembly of State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 920 (9th Cir. 1992); *Athletics Inv. Grp., LLC v. Schnitzer Steel Indus.*, Inc., No. 21-cv-05246-MMC (DMR), 2024 WL 2191007, at *3 (N.D. Cal. May 14, 2024).

Even where those elements are satisfied, the deliberative process privilege is only a qualified privilege, which requires balancing multiple potentially relevant factors:

> (1) the relevance of the evidence; (2) the availability of other evidence, (3) the government's role in the litigation, and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. Other factors that a court may consider include: (5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law.

*N. Pacifica*, 274 F. Supp. 2d at 1122 (citation omitted).

This "privilege must be strictly confined within the narrowest possible limits consistent with the logic of its principles," and "should not be indiscriminately invoked." *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 601 (N.D. Cal. 2009) (citations and internal quotation marks omitted).

## IV. ANALYSIS

The parties dispute both whether the sample documents at issue fall within the deliberative process privilege to begin with, and whether there is sufficient cause to order their production notwithstanding that privilege.

Most of the documents selected as samples, including nearly all of the internal communications among Department personnel, fall squarely within the privilege because they relate to a deliberative process of considering whether to adjust the basis for setting the EPF. *See generally* ECF No. 110-1 (Armstrong Decl., describing that process). Others, like spreadsheets laying out retrospective cost inputs or services rendered, fall at most towards the outer edge of

what this privilege protects.

"Factual material generally is not considered deliberative." *McKesson*, 264 F.R.D. at 601 (citing *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 921–22 (9th Cir. 1992)). That general principle is subject to exceptions. "[T]he fact/opinion distinction should not be applied mechanically," because "purely factual" material may be protected where its disclosure would "expose[] the deliberative process," or when "it is so interwoven with the deliberative material that it is not severable." *Id.* (citations and internal quotation marks omitted). Here, however, the Department has not shown—through Armstrong's declaration or otherwise—that disclosure of primarily retrospective accountings like the spreadsheet designated as Line 49 would reveal any "deliberative" material that is "actually . . . related to the process by which *policies* are formulated," as opposed to mere calculations of fees in accordance with a particular policy. *See Transgender L. Ctr.*, 46 F.4th at 783 (emphasis added); *see also Chattler v. United States*, No. C-07-4040 MMC (EMC), 2009 WL 1313227, at *2 & n.2 (N.D. Cal. May 12, 2009) (noting that a "mere ministerial decision that simply implements a policy already formulated" is not protected by the deliberative process privilege, and citing authority so holding). "[V]alidating the numbers" underlying agency actions is an important process that requires candor among government employees, *see* ECF No. 110-1, ¶ 17 (second bullet point), but it is not the sort of engagement in policy development that is protected by the deliberative process privilege, at least absent evidence that disclosure of those numbers would indirectly reveal policy deliberations.

Regardless of whether the privilege applies, however, the Court finds sufficient cause to order production revealing the Department's deliberative processes related to the EPF because Plaintiffs have a sufficient need for such material. Plaintiffs contend that the Department's reasons for and understanding of maintaining the EPF at $60 are "central to Plaintiffs' claims," ECF No. 110 at 3, including the question of whether the Department's new time-value methodology "was a backwards justification for a decision that was already made," ECF No. 129 at 8.

As discussed below, the Court finds that interest sufficient to warrant production, in part based on a factor not meaningfully addressed by the parties: the exact match between the

Department's initial calculation of a $60 fee in or around 2002 based on cost, and its subsequent calculation of an *identical* $60 fee based on purported value to applicants around two decades later, after an extended period in which the Department apparently recognized that its earlier approach no longer justified that amount. That coincidence raises enough of a question of pretext to warrant discovery notwithstanding the deliberative process privilege.

One of Plaintiffs' claims in this case is that the Department's decision to maintain the $60 EPF (or perhaps to alter the basis for justifying it) was arbitrary and capricious in violation of the Administrative Procedures Act (APA). Review under the APA rarely implicates decisionmakers' subjective motivations, and "a court may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons." *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019). That principle is not, however, absolute. "The reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public. Accepting contrived reasons would defeat the purpose of the enterprise." *Id.* 785 (2019). In at least some circumstances, decisions that are "both preordained and rooted in pretext" are therefore "arbitrary and capricious in contravention of the APA." *Nat'l TPS All. v. Noem*, 166 F.4th 739, 771 (9th Cir. 2026) (Mendoza, J., concurring); *see also, e.g.*, *Anthropic PBC v. U.S. Dep't of War*, 825 F. Supp. 3d 1101, 1133 (N.D. Cal. 2026) (citing *Department of Commerce* and Judge Mendoza's concurrence in *National TPS Alliance* for the relevance of pretext to an APA claim), *appeal docketed*, No. 26-2011 (9th Cir. Apr. 2, 2026); *Dorcas Int'l Inst. of R.I. v. U.S. Citizenship & Immigr. Servs.*, 834 F. Supp. 3d 242, 321 (D.R.I. 2026) (citing *Department of Commerce*), *appeal docketed*, No. 26-1703 (1st Cir. June 12, 2026); *Brnovich v. Biden*, 630 F. Supp. 3d 1157, 1176–77 (D. Ariz. 2022) (finding a plausible allegation of pretextual reasoning relevant to denying a motion to dismiss an APA claim).

The memorandum proposing the new "time-based value method for calculating and setting the [EPF]" stated that the typical cost-based methodology was a poor fit for the EPF because the costs of "inputs" for expedited processing were essentially the same as for any other passport processing, but prioritizing those passports over others that had not sought expedited services

nevertheless provided substantial added value to citizens who chose to pay for expedited processing. ECF No. 124-4 at 2–3. The Department calculated that value by dividing the normal $130 cost for passport processing by the 45.5 days it typically took to complete the process, and then multiplying the resulting "cost per day" of $2.857 by the twenty-one days typically saved when processing is expedited (for service by mail). *Id.* at 3. That calculation resulted in a value to the applicant of $59.997, *id.*, which rounded to the nearest cent results in the same exact value of $60.00 that the Department had been charging for almost twenty years, and had originally set in 2002 on an entirely different basis of calculating its then-applicable costs for expedited service.

Though not addressed by the parties in briefing this discovery dispute, that "cost per day" metric—dividing the total cost by the total typical wait time—may not be an intuitive measure of value. The standard passport fee of $130 is not based on the value that applicants receive from their passports, which would likely be difficult to determine and vary greatly among individuals. Instead, the standard fee is based on the costs the Department incurs to process applications and issue passports. *See* ECF No. 155-1 at 39–40 (Zakrajsek Dep. at 38:18:–39:1). Applicants may be even less likely to view that $130 fee as a payment for the privilege of each day they spend waiting for their passport to issue, such that it can be divided among those days to determine the value of each day. Applied to an extreme, the Department's daily value methodology would suggest that instantaneous processing would have exactly twice the value of standard processing, because multiplying the 45.5 days saved in that scenario by the $2.857 rate (essentially reversing the process by which it was derived) results in an added value of $130. Conversely, if the daily rate were deducted for each day of delay beyond the standard wait time, this method suggests that if passport processing took ninety-one days, twice as long as is typical, then it would provide no value at all to the applicant. It is not clear that either of those propositions has any relation to how applicants would actually value those hypothetical faster and slower processing times. All such calculations, including the $60 value that the Department now uses to justify the EPF, seem to rely on a sort of economic alchemy: the base fee (based on the Department's costs, not any assessment of value) and the usual 45.5-day processing time (presumably based on the Department's logistical constraints, not any assessment of value) transform when combined into an estimate of value to

United States District Court
Northern District of California

applicants.

This Order is limited to addressing the parties' particular discovery dispute, and thus should not be construed as determining whether that new method of justifying the EPF was permissible under the APA and § 9701, or even as implying a likely outcome. The Department might be able to show on the merits that a roughly 46% surcharge for a roughly 46% reduction in processing time is sufficiently fair and reasonable to be permissible, even if it might not reflect a rigorous analysis of how applicants would value that benefit, or the Department might be able to demonstrate that its time-value calculation process is a valid and accepted method of measuring such value.[5]

However, there are grounds to explore through discovery, despite the deliberative privilege, whether the Department has advanced a pretextual justification for its fee. It is an astonishing coincidence that the Department's chosen new method of calculating value resulted—to the cent[6]—in the exact same fee that it had previously assessed using an entirely different methodology many years earlier, and which it had declined to change over several years in which it recognized that the costs had dropped below a level that would justify that fee under its older method of calculation. *See* ECF No. 124-4 at 3; ECF No. 147 at 2. That coincidence, combined with the arguably questionable logic underlying the Department's value calculations, supports a strong interest of Plaintiffs in discovery to understand whether the decision to retain the $60 fee was "preordained and rooted in pretext." *see Nat'l TPS All.*, 166 F.4th at 771. Other than production of deliberative documents themselves, Plaintiffs have no meaningful way to test whether the Department's deliberations were genuinely intended to set the EPF at a value that reflects the Department's costs or the value provided to applicants as stated in the June 1, 2021 memorandum, as opposed to seeking a pretextual justification to maintain the longstanding rate of

[5] Precisely what the Department will need to show to defend against Plaintiffs' claims is a merits question for the presiding judge to resolve on an appropriate procedural posture. For the purposes of this Order, it is enough that Plaintiffs have a strong and legitimate interest in understanding whether the Department's stated justification for the EPF is pretextual, so that they can present informed argument to Judge Chen regarding the potential legal relevance of any such pretext.

[6] At least in the initial policy memorandum that proposed and approved the change. ECF No. 124-4. Other documents in the record and submitted in camera reflect slight differences in this calculation.

United States District Court
Northern District of California

$60.

On the other side of the scale, at least some of the documents at issue reflect internal deliberations that would otherwise be protected by the deliberative process privilege, but they do not relate to controversial topics such that their disclosure is likely to cause opprobrium for those involved or an otherwise extreme chilling effect on future decisionmakers engaged in similar deliberations. The Department's interest in confidentiality is therefore weaker than it might be in other circumstances, though the Court recognizes at least some interest in shielding frank discussions of potential errors or opposing views, to avoid chilling the sort of internal scrutiny necessary for thorough and accurate work. *See, e.g.*, ECF No. 110-1 (Armstrong Decl.) ¶¶ 23–24. That interest might be sufficient to support withholding most or all of the documents at issue from production, were it not for the remarkable convergence between the Department's longstanding $60 cost-based EPF and its more recent alternative calculation of precisely $60 in value to support maintaining the same fee going forward. That unusual circumstance not only increases Plaintiffs' interest in disclosure to verify a statistically unlikely coincidence; it also reduces potential chilling effects of an order compelling disclosure here because it is unlikely to recur in future cases.

In sum, looking to the factors articulated in *North Pacifica* and other cases: (1) the relevance of documents reflecting the Department's EPF decision-making process is high to the extent that Plaintiffs have an interest in exploring potential evidence supporting or negating an inference of pretext; (2) no other source of such evidence is apparent; (3) the government is a party to this litigation, thus reducing the strength of the privilege as compared to when government documents are sought for use in litigation between private parties;[7] (4) potential chilling effects appear to be limited; (5) the litigants in this class action have a strong interest in accurate factfinding; (6) the issues in this litigation do not appear to reflect either a remarkably high or a remarkably low level of "seriousness," thus rendering that factor neutral; (7) the case involves allegations of government misconduct, but of a relatively banal variety that does not

---

[7] *See, e.g.*, *Llera v. Las Vegas Metro. Police Dep't*, 564 F. Supp. 3d 914, 920 (D. Nev. 2021) ("The government is a party . . . not an uninvolved entity that is being asked to disclose a typically confidential document for little reason. Accordingly, this cuts in favor of disclosure."); *Est. of Serna v. County of San Diego*, 689 F. Supp. 3d 848, 867 (S.D. Cal. 2023) (citing *Llerna*).

involve (for example) violations of core civil rights or systemic threats to the constitutional structure, thus weighing slightly in favor of disclosure; and (8) "the federal interest in enforcement of federal law" weighs somewhat in favor of disclosure to determine whether the Department complied with its legal obligations under such law. *See N. Pacifica*, 274 F. Supp. 2d at 1122.

Under the circumstances of this case, the Court finds Plaintiffs' interests sufficient to overcome the Department's interest in shielding at least some of its deliberations, and ORDERS disclosure of the "prioritized" documents where Plaintiffs have challenged the Department's assertion of the deliberative process privilege, except to the extent those documents are protected independently by the attorney-client privilege or some other timely-asserted protection from disclosure. In other words, of the "roughly 200" documents identified by Plaintiffs, *see* ECF No. 110 at 1, the Department must produce those that were withheld solely on the basis of the deliberative process privilege, as well as any such documents where portions protected by some other privilege can be reasonably redacted or otherwise segregated. Within that production, the Department may also redact portions of documents reflecting deliberations unrelated to the EPF. *See, e.g.*, Line 266 (draft document addressing a wide range of Department fees and services, of which only a small part relates to the EPF).[8]

That disclosure strikes a reasonable balance, at least as a starting point, to allow Plaintiffs to test and understand the basis for the Department's decisions. The Department need not produce at this time the full universe of apparently thousands of documents it withheld based on privilege, but Plaintiffs may seek disclosure of specific additional documents withheld under the deliberative process privilege based on a particularized showing of need after reviewing the documents the Court now orders produced. The parties are encouraged to compromise in resolving any such disputes.

[8] Such redactions should generally be limited to the sort of direct exchange of ideas (e.g., emails, memoranda, draft policy documents, comments, and the like) at the core of the deliberative process privilege. If the Department redacts material falling at the periphery of the privilege, such as underlying data gathered to facilitate a decision unrelated to the EPF, it must provide a clear and compelling justification.

United States District Court
Northern District of California

## V. CONCLUSION

For the reasons discussed above, the Court finds production of documents warranted notwithstanding the deliberative process privilege. The Department is ORDERED to produce documents consistent with this Order no later than one week from the date of this Order. The Department may, of course, designate documents as confidential under the Stipulated Protective Order (ECF No. 53) to the extent warranted by that Order and Rule 26(c) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: September 21, 2026



LISA J. CISNEROS
United States Magistrate Judge